IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| MID-ATLANTIC FIELD SERVICES LLC, <br><br> Plaintiff, <br><br> v. <br><br> BOBBIE BARFIELD, *et al.*, <br><br> Defendants. | Civil Action No. 3:23-cv-177-HEH |

## <u>MEMORANDUM OPINION</u>
**(Granting Defendants' Partial Motion to Dismiss, Denying Plaintiff's Motion for Preliminary Injunction, and Dismissing Complaint without Prejudice)**

This matter is before the Court on Mid-Atlantic Field Services LLC's ("Plaintiff" or "Mid-Atlantic") Motion for Preliminary Injunction (ECF No. 13), filed on April 3, 2023, and Bobbie Barfield; Brandi Gwinn; and Hydro Mole, LLC's (collectively, "Defendants") Partial Motion to Dismiss (ECF No. 16), filed on May 1, 2023. This is a case about employment-related contentions. Plaintiff brings ten counts against Defendants, arguing that, *inter alia*, Defendants unlawfully obtained, used, and benefited from Mid-Atlantic's trade secrets (the "Trade Secrets"). Defendants, on the other hand, deny these allegations. Instead, they maintain that they properly attained certain information from Mid-Atlantic and that Mid-Atlantic permitted them to utilize the information in their business venture. Moreover, in their Counterclaim, Defendants raise ten counts against Plaintiff, including allegations that Plaintiff violated federal and state labor laws.

While the parties' Complaint and Counterclaim raise extensive legal issues, the

ripe motions before the Court can be resolved simply because Plaintiff's one federal claim does not allege any nexus between interstate or foreign commerce.[1] This deficiency, in itself, warrants dismissal of Plaintiff's Complaint.[2] For the reasons stated herein, the Court will grant Defendants' Partial Motion to Dismiss and deny Plaintiff's Motion for Preliminary Injunction. The Court will dismiss the entirety of Plaintiff's Complaint because it does not have jurisdiction over Plaintiff's claims.

## I. BACKGROUND

According to the Complaint, Mid-Atlantic has developed Trade Secrets relating to its industrial vacuuming, cleaning, and hydro excavation services. (Compl. ¶ 13, ECF No. 1.) Those Trade Secrets include their "customer lists, files and records, customer quotes, pricing and contracts, customer preferences and requirements, cost, pricing and profit information, pricing strategies . . . , contracts and orders, detailed actual and forecasted financial information, profit margin information, and other confidential and proprietary information . . . ." (*Id.*) Mid-Atlantic alleges that this information constitutes "Trade Secrets" under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

---

[1] The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. Va. Loc. R. 7(J).

[2] The Court does not have diversity jurisdiction over this matter because the Complaint makes clear that complete diversity among the parties does not exist. Mid-Atlantic is a Virginia LLC with its principal place of business in Chesterfield, Virginia. Barfield and Gwinn are both Virginia residents. Hydro Mole's principal place of business is also in Virginia. Therefore, this Court's subject matter jurisdiction hinges on whether Plaintiff's Complaint adequately raises a federal question. *See* 28 U.S.C. §§ 1331, 1332. It does not do so.

2

("DTSA"), and that it "has engaged in reasonable efforts to maintain the secrecy" of the Trade Secrets. (*Id.* ¶ 16.)

On July 2, 2020, Mid-Atlantic hired Barfield as Sales and Operations Manager.[3] (*Id.* ¶ 19.) He was responsible for "quoting, pricing, servicing and contracting with Mid-Atlantic's customers and marketing, offering and providing industrial vacuuming and cleaning services, municipality vacuuming and cleaning services, and hydro excavation services." (*Id.* ¶ 20.)

Eventually, Mid-Atlantic and Barfield entered into an Employment Agreement ("EA"), on April 4, 2022. (*Id.* ¶ 21.) Pursuant to the EA, Barfield agreed not to misappropriate or improperly use or disclose any of Mid-Atlantic's Trade Secrets. (*Id.* ¶ 23.) Section 7(a) of the EA also included a non-compete provision, which prevented Barfield from engaging in a competitive position within a fifty-mile radius of Mid-Atlantic's Chesterfield office for twelve months following the end of his employment with Mid-Atlantic. (*Id.* ¶ 24.) Barfield also agreed not to engage in certain activities like soliciting Mid-Atlantic's customers or employees for that same period. (*Id.* ¶¶ 25–26.)

Mid-Atlantic maintains that although Barfield was entrusted with its Trade Secrets, he and Defendant Gwinn[4] unlawfully used the Trade Secrets to "launch their plan to steal Mid-Atlantic's business." (*Id.* ¶¶ 29–34.) As part of the alleged plan to steal the business, Barfield met with Craig Stariha, Mid-Atlantic's Business Manager, and the

---

[3] Barfield, however, contends that he was hired on May 7, 2020. (Countercl. ¶ 207.)

[4] Gwinn is Barfield's girlfriend and Hydro Mole's Manager and Registered Agent. (Compl. ¶ 2.)

3

two agreed for Barfield to purchase an assignment of Mid-Atlantic's physical property located in its Petersburg location. (*Id.* ¶¶ 37, 41.) Mid-Atlantic maintains that Barfield assured Stariha that he would use the property for his business, Hydro Mole, and that Hydro Mole would not engage in any industrial vacuuming or cleaning services. (*Id.*) Furthermore, to the extent Hydro Mole would "engage in any hydro excavation services[,] it would only be as a subcontractor for Mid-Atlantic on Mid-Atlantic projects and not in any other capacity." (*Id.* ¶ 36.) Despite these assurances, Defendants allegedly competed with Mid-Atlantic, solicited Mid-Atlantic's customers and employees, and improperly used and disclosed the Trade Secrets for their own benefit all while still employed by Mid-Atlantic. (*Id.* ¶¶ 45–48.)

On February 8, 2023, Barfield resigned his employment with Mid-Atlantic. (*Id.* ¶ 51.) Mid-Atlantic asserts that after he resigned, Barfield "took and wrongfully retained possession of his company issued laptop computer that belonged to Mid-Atlantic (the "Laptop"). (*Id.* ¶ 52.) The Laptop allegedly contained substantial Trade Secrets, including quotes, pricing, and contracts for Mid-Atlantic customers. (*Id.* ¶ 53.) Barfield was the primary source of these Trade Secrets and had originally stored them on the Laptop while he was employed with Mid-Atlantic. (*Id.* ¶ 54.) Barfield allegedly "tricked" Mid-Atlantic's IT contractor into transferring the Trade Secrets from the Laptop into Barfield's personal computer, and then deleting all of the Laptop's contents. (*Id.* ¶ 55.) Mid-Atlantic argues that, in doing this, Barfield wrongfully obtained the Trade Secrets to use in competition with Mid-Atlantic and simultaneously prevented Mid-

Atlantic from using the information, which was "essential [for it] to the operation of Mid-Atlantic's business." (*Id.* ¶ 56.)

Mid-Atlantic contends that its customers and employees have advised Mid-Atlantic that Defendants falsely told them that Mid-Atlantic and Hydro Mole merged businesses, misleading them into terminating their contracts and relationships with Mid-Atlantic and enter into contracts and relationships with Hydro Mole. (*Id.* ¶¶ 62–63.) Mid-Atlantic asserts that such conduct amounts to defamation. (*Id.*) Additionally, Mid-Atlantic argues that Defendants have "attempted to bribe and coerce" its employees by paying them $150 to refrain from appearing at scheduled jobs "in order to sully Mid-Atlantic's reputation and induce customers to terminate their relationships with Mid-Atlantic and transfer their business to Hydro Mole." (*Id.* ¶ 64.) In addition to defamation, bribery, and coercion, Defendants allegedly used other unlawful means to interfere with Mid-Atlantic's customer and supplier relationships, such as misappropriating Mid-Atlantic's Trade Secrets and using the Trade Secrets to contact customers, solicit and underbid projects, and steal Mid-Atlantic's business. (*Id.* ¶ 65.) Mid-Atlantic also argues that Defendants stole Mid-Atlantic's vacuum truck and property from its office for improper and competitive purposes. (*Id.* ¶ 67.)

Based on these facts, Mid-Atlantic brings the following claims: Trade Secret Misappropriation against all Defendants, pursuant to 18 U.S.C. § 1836, *et seq.* (Count 1); Trade Secret Misappropriation against all Defendants, pursuant to Va. Code § 59.1-336, *et seq.* (Count 2); Breach of Employment Agreement against Barfield (Count 3); Breach

of Fiduciary Duties against Barfield (Count 4); Tortious Interference with Employment Agreement against Gwinn and Hydro Mole (Count 5); Aiding and Abetting Barfield's Breach of Fiduciary Duties against Gwinn and Hydro Mole (Count 6); Conversion against all Defendants (Count 7); Unjust Enrichment against all Defendants (Count 8); Tortious Interference with Customer Relationships against all Defendants (Count 9); and Business Conspiracy against all Defendants, pursuant to Va. Code §§ 18.2-499 and 18.2-500 (Count 10).

In Plaintiff's Motion for Preliminary Injunction, Plaintiff maintains that preliminary injunctive relief is "necessary" because Defendants "are unlawfully competing with Mid-Atlantic, soliciting Mid-Atlantic's customers and employees, and misappropriating Mid-Atlantic's Trade Secrets in violation of the DTSA, Barfield's EA, and Virginia law. (Mem. in Supp. of Prelim. Inj. at 1–2.)

Defendants' Partial Motion to Dismiss seeks to dismiss all claims in Plaintiff's Complaint asserted against Gwinn (Counts 1, 2, 5, 6, 7, 9, and 10); the portions of the Complaint that purport to rely on the restrictive covenants included in Barfield's EA; and Counts 5, 6, and 10 of the Complaint in their entirety.

## II. LEGAL STANDARDS

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A

complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 678). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

A preliminary injunction affords "an extraordinary and drastic remedy" prior to trial. *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008); *see also MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (stating that "preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances.") (citation omitted). Courts should

grant such relief only when "the applicant's right to relief [is] indisputably clear." *Id.* A moving party must establish the presence of the following: (1) a clear showing that it will likely succeed on the merits; (2) a clear showing that it is likely to be irreparably harmed absent preliminary relief; (3) the balance of equities tips in favor of the moving party; and (4) a preliminary injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22–23 (2008); *see also W. Va. Assoc. of Club Obama, Inc. v. Fed. Election Comm.*, 575 F.3d 342, 346–47 (4th Cir. 2009).

### III. ANALYSIS

Defendants' Partial Motion to Dismiss is premised on numerous bases, however, the Court only needs to address one: "[n]owhere in its Complaint, Motion, or Brief . . . does Plaintiff assert that Mid-Atlantic offers or intends its service to be offered in 'interstate or foreign commerce.'" (Defs.' Opp'n Mot. at 4, ECF No. 19.) The DTSA, upon which Count 1 is based, prevents the misappropriation of a "trade secret [that] is related to a product or service used in, or intended for use in, *interstate or foreign commerce.*" 18 U.S.C. § 1836(b)(1) (emphasis added). Plaintiff's Complaint fails to assert that its Trade Secrets are related to products that are used in, or intended for use in, interstate or foreign commerce. Rather, its Complaint is silent as to this element.[5]

Numerous federal courts have dismissed complaints that raise DTSA claims when such complaints fail to allege a nexus between interstate or foreign commerce and the

---

[5] In Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction, Plaintiff states, "Mid-Atlantic conducts business, performs projects, and has customers primarily throughout Virginia." (Mem. in Supp. at 16, ECF No. 14.) This statement is insufficient to meet the interstate or foreign commerce nexus requirement.

8

alleged Trade Secrets. *See Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 173 (E.D. Pa. 2017) (explaining that "[t]his deficiency, in itself, warrants dismissal of plaintiffs' DTSA claim."); *see also Hydrogen Master Rts., Ltd. v. Weston*, 228 F. Supp. 3d 320, 337–38 (D. Del. 2017) (dismissing DTSA claim because the complaint failed to allege any nexus between interstate or foreign commerce and the alleged trade secrets). In an attempt to cure this deficiency, Plaintiff's Reply includes an attached declaration of Stariha, in which he states: "Mid-Atlantic offers and provides its services not only to companies in Virginia, but outside the commonwealth as well." (Stariha Decl. at 3, Pl.'s Reply, ECF No. 23-1.) However, this brief, conclusory statement is inadequate because it is bare-boned and lacks any supporting evidence. Accordingly, because Plaintiff fails to allege any nexus between interstate or foreign commerce and the alleged Trade Secrets, Defendants' Partial Motion to Dismiss will be granted and Count 1 will be dismissed against all Defendants.

Count 1 is Plaintiff's only claim which arises under federal law; the nine remaining counts (Counts 2–10) are state law claims. Congress has provided that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As a result, federal courts may resolve "state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy as the federal

claims." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). In this case, because Plaintiff's sole federal claim will be dismissed and diversity jurisdiction does not exist,[6] the Court will not exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, Plaintiff's Complaint will be dismissed in its entirety.[7]

Furthermore, Plaintiff's Motion for Preliminary Injunction (ECF No. 13) will be denied because it fails to make a clear showing that it will likely succeed on the merits. *See Winter*, 555 U.S. at 22–23; *Fed. Election Comm.*, 575 F.3d at 346–47.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 16) will be granted. Plaintiff's Complaint will be dismissed in its entirety against all Defendants. As it is possible for Plaintiff to plausibly allege a nexus between its alleged Trade Secrets and interstate or foreign commerce, the Court will dismiss the Complaint claim without prejudice. Should Plaintiff wish to file an Amended Complaint, Plaintiff must do so within thirty (30) days.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 12, 2023
Richmond, Virginia

---

[6] *See supra* footnote 2.

[7] Defendants do not move to dismiss the entirety of Plaintiff's Complaint against all Defendants, however, because the Complaint fails to adequately plead a federal hook, this Court decides *sua sponte* that it will not exercise jurisdiction over the matter, so the Complaint will be dismissed in its entirety against all Defendants.

10